# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-01-00256-CR
===============

**Joseph Montgomery Reid, Appellant**

**v.**

**The State of Texas, Appellee**

=====================================================================
### FROM THE COUNTY COURT AT LAW OF CALDWELL COUNTY
### NO. 27,271, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING
=====================================================================

Appellant Joseph Montgomery Reid was convicted of driving while intoxicated. *See* Tex. Pen. Code Ann. § 49.04(a) (West Supp. 2002). The court assessed punishment at confinement in the county jail for 120 days, probated for twenty-four months, and a fine in the amount of $800. By five points of error, appellant appeals the conviction, alleging that the trial court erred in admitting (1) incriminating statements made by appellant at the scene of the traffic stop, (2) a videotape depicting appellant at the scene of the stop and at the jail following his arrest, and (3) a medical report. We conclude that the trial court erred in admitting that portion of the videotape depicting appellant's invocation of his right to counsel and the subsequent questioning of appellant following this invocation. Because we determine the error was not harmless beyond a reasonable doubt, we reverse the conviction and remand for a new trial.

## BACKGROUND

During the early morning hours of June 10, 1999, Lockhart Police Officer Anastacio Cruz and his partner, Officer Armando Val Verde, were pursuing a speeding truck in Caldwell County. Eventually, they lost sight of the truck. In the nearby vicinity, however, the officers encountered a similar looking truck that was not speeding; appellant was later identified as the driver of this vehicle. Upon witnessing the truck make a left-hand turn without a turn signal, Officer Cruz activated his overhead lights and pulled the driver over. While speaking to appellant, Officer Cruz observed that appellant's eyes were watery, his speech was slurred, and he had a strong odor of alcohol on his breath. In response to questioning, appellant admitted to having had two beers before leaving his office. Officer Cruz then administered field sobriety tests, which appellant performed poorly. Responding to Officer Cruz's request for assistance, Officer Michael Hart appeared and administered a horizontal gaze nystagmus (HGN) test on appellant; Officer Hart's observations indicated to him that appellant was intoxicated. Most of the events described above were recorded on video by a camera attached to Officer Cruz's vehicle.

Officer Cruz placed appellant under arrest and transported him to the county jail, where he was also videotaped. Once there, appellant alleged that he had been injured by the handcuffs and requested medical attention. Appellant was subsequently transported to the local hospital where he was examined by a doctor and released.

Before trial, appellant filed a motion to suppress, among other things, all written and oral statements made by appellant to law enforcement officers in connection with this case, claiming that the statements were obtained in violation of appellant's Fourth, Fifth, Sixth, and Fourteenth

2

Amendment rights under the United States Constitution. The trial court denied the motion. Following a jury trial, appellant was convicted of driving while intoxicated.

**DISCUSSION**

By his first two points of error, appellant complains of the trial court's denial of his motion to suppress incriminating statements made at the scene of the traffic stop, which, he argues, were the product of custodial interrogation. Although appellant failed to specify which incriminating statements he found objectionable, *see* Tex. R. App. P. 38.1(h) (brief must include appropriate citations to record), a review of the record reveals that, in response to questioning by Officer Cruz, appellant admitted to consuming two beers while working late at his office. Assuming this admission forms the basis of appellant's points of error, we find no error in the trial court's admission of this evidence.

Appellant argues that the incriminating statements were the result of a custodial interrogation, and appellant should have been apprised of his *Miranda* rights before the questioning. *See Miranda v. Arizona*, 384 U.S. 436, 477 (1966) (protections against self-incrimination must be given "when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way"); *see also* Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (West Supp. 2002). Because he was not advised of his rights, he contends his statements should have been excluded from evidence by the trial court. We disagree with appellant's characterization of his exchange with Officer Cruz as a custodial interrogation.

In reviewing appellant's contentions, we defer to the trial court's factual determinations but review *de novo* the court's application of law to those facts. *Guzman v. State*, 955

3

S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellant argues that the presence of three patrol cars at the scene of the stop indicated that appellant was in police custody and not free to leave.

Generally, persons detained pursuant to a routine traffic stop are not in custody for purposes of *Miranda. Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Stevenson*, 958 S.W.2d 824, 828 (Tex. Crim. App. 1997). A noncustodial detention, however, may escalate into custodial interrogation based on subsequent events. *Stevenson*, 958 S.W.2d at 828. Both Officer Cruz and appellant testified at the suppression hearing. Their recollection of the presence of additional patrol vehicles at the time of the stop differed. The record does not disclose how many patrol vehicles were in the vicinity when Officer Cruz began questioning appellant. Even if all three vehicles were present at the time appellant admitted to drinking two beers, however, the facts do not establish that the detention escalated into a custodial interrogation at the time the statements were made.

Officer Cruz testified that the reason he stopped appellant was because appellant had failed to use his turn signal. The detention occurred on a public street. Appellant was not physically restrained during the detention. Although the record does not disclose how many vehicles were present during Officer Cruz's initial questioning of appellant, it is clear that appellant was confronted initially by Officers Cruz and Val Verde and then later by Officer Hart, who administered the HGN test. Upon questioning appellant, Officer Cruz observed some indications of alcohol consumption: watery eyes, slurred speech, and a strong odor of alcohol on appellant's breath. According to Officer Cruz's testimony, although he believed appellant had consumed alcohol, he did not conclude that appellant was intoxicated until after appellant performed the field sobriety tests and the HGN test. Only then did Officer Cruz place appellant under arrest. We hold that these circumstances did not

4

create a "police-dominated" atmosphere and Officer Cruz's detention of appellant did not escalate into a custodial interrogation at the time appellant admitted to drinking two beers. *See Berkemer*, 468 U.S. at 442 (field sobriety testing and questioning did not convert roadside detention into arrest). We overrule appellant's first and second points of error.

By his third point of error, appellant complains that the trial court erred in admitting the entire videotape into evidence and playing it for the jury. He argues that the videotape includes the same incriminating statements—*i.e.*, he drank two beers while at work before he was stopped—that he found objectionable in points of error one and two. The basis for appellant's complaint is again premised on his assertion that he was in custody at the time he made those statements and consequently, should have been advised of his rights before he was interrogated.

We have already concluded that appellant's statements to Officer Cruz were not the product of a custodial interrogation. Accordingly, the trial court did not err in admitting that portion of the videotape depicting the roadside detention and questioning of appellant. *See id.* We overrule appellant's third point of error.

By his fifth point, appellant argues the trial court committed error by overruling his hearsay objection to the introduction of hospital records. These records were the result of a hospital emergency room visit by appellant following his complaints that he suffered injuries from the handcuffs placed on his wrists. The hospital report includes a handwritten comment by the treating physician indicating that appellant "can come back when sober if pain persists," suggesting that appellant was intoxicated. The records were introduced through the testimony of Janice Ohnheiser, the director of records for Seton Edgar B. Davis Hospital in Luling. Prior to the admission of the records, appellant objected based on the illegibility of the report and argued that it called for legal

conclusions from the doctor that he was not qualified to express. The trial court overruled the objections and admitted the records.

On appeal, appellant complains that the report constituted hearsay and that it was so prejudicial and inflammatory that it was error to admit it. These complaints on appeal do not comport with appellant's objection during the trial, and he has therefore failed to preserve error for our review. *See Sterling v. State*, 800 S.W.2d 513, 521 (Tex. Crim. App. 1990).

Even if appellant had preserved his complaint, however, the report was admissible under the business records exception to the hearsay rule. *See* Tex. R. Evid. 803(6). Rule 803(6) expressly allows the admission into evidence of opinions and diagnoses that are written into a business record by any person who qualifies under the rule to make those entries. *Luxton v. State*, 941 S.W.2d 339, 342 (Tex. App.—Fort Worth 1997, pet. ref'd). Ohnheiser testified that she was the custodian of records for the Seton B. Edgar Davis Hospital, that the report was kept in the regular course of business of the hospital, that an employee or representative of the hospital created the report or transmitted the information, that the report was created at or near the time of the event, and that the employee or representative who made the entries had actual knowledge of the event. No evidence was presented indicating a lack of trustworthiness of the report. Thus, the State satisfied the requirements under rule 803(6), and the report was properly admitted under the business exception to the hearsay rule.

We also cannot agree that the report was so prejudicial that it was error to admit it. Rule 403 of the Texas Rules of Evidence provides that relevant evidence is admissible, unless the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on rehearing).

6

The trial court is given wide latitude, and this Court should not reverse the trial court's ruling if the ruling is within a reasonable zone of disagreement. *Montgomery*, 810 S.W.2d at 391. The report included one phrase that appellant finds objectionable: "can come back when sober if pain persists." The jury, however, had already heard the testimony of Officer Cruz, which we held was properly admitted. Officer Cruz testified that he administered two field sobriety tests, and that appellant failed them. Based on his observations, Officer Cruz believed appellant was intoxicated. The jury also viewed appellant on videotape and heard appellant testify that he had consumed two beers while working late the evening he was stopped. In addition, the State presented the testimony of Officer Hart, who administered the HGN test to appellant and testified that appellant failed the test. The complained-of phrase in the report was cumulative of other evidence indicating intoxication. Thus, we cannot conclude that the probative value of the report was substantially outweighed by the danger of unfair prejudice. Appellant's fifth point is overruled.

By his fourth point, appellant urges that the trial court erred in playing certain portions of the videotape before the jury. Specifically, appellant directs this Court to the portion of the video in which he invoked his right to counsel and refused to answer any more questions.

The State asserts that appellant waived this point of error by affirmatively stating, "We have no objection," when the video was offered into evidence before the jury. Appellant filed a pretrial motion to suppress, alleging a violation of his Fifth Amendment rights and requesting suppression of any evidence obtained in violation of those rights. The trial court overruled the motion. When a court overrules a motion to suppress evidence, the defendant need not subsequently object to the admission of the same evidence at trial to preserve error. *Fierro v. State*, 969 S.W.2d 51, 55 (Tex. App.—Austin 1998, no pet.). This pretrial objection is waived, however, if the

7

defendant later affirmatively asserts that he has no objection to the admission of the same evidence. *Id.*

In this case, after the pretrial hearing, the trial court declared that the videotape would be deemed admissible. During the trial, the State "reoffered" the video and moved to publish it to the jury. Appellant responded, "I believe [the video is] already admitted. We have no objection." The trial court then admitted the video into evidence. Immediately after the trial court announced that the video was admitted, appellant added, "[M]ay I state for the record, we have no objection other than those previously." The trial court responded, "Understood, and those objections are overruled, sir." These facts are analogous to those in *Fierro v. State*, in which this Court held that although the defendant initially asserted he had no objection to the admission of a videotape, he did not waive error because immediately after his assertion, he made reference to the previous objection. *Id.* at 55. Like Fierro, the appellant in this case alluded to his previous objection to the admission of the video *before* the tape was played for the jury. And the trial court acknowledged that it "understood" appellant's objections and overruled them. Under the circumstances, we decline to hold that the claimed error was waived.

Having determined that appellant preserved this point of error for review, we address whether the trial court erred in admitting the objectionable portion of the videotape into evidence. We review a trial court's decision not to suppress evidence for an abuse of discretion. *Williams v. State*, 535 S.W.2d 637, 639-40 (Tex. Crim. App. 1976). Law enforcement officers must cease questioning a suspect who clearly asserts his right to have counsel present during custodial interrogation. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *Miffleton v. State*, 777 S.W.2d 76, 79 (Tex. Crim. App. 1989); *Sontag v. State*, 841 S.W.2d 889, 893 (Tex. App.—Corpus Christi 1992,

8

pet. ref'd). Continued questioning after an accused has requested an attorney violates his rights, and responses to the continued interrogation are presumptively inadmissible. *Miffleton*, 777 S.W.2d at 81; *Sontag*, 841 S.W.2d at 893. Furthermore, "a recorded verbal assertion of these rights raises an inference of guilt, and cannot be disclosed to the jury." *Sontag*, 841 S.W.2d at 893. As the Supreme Court explained, "[I]t is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Miranda*, 384 U.S. at 468 n.37.

In this case, after appellant was taken to jail, Officer Cruz properly read appellant his *Miranda* rights, asked him to provide a breath specimen, and furnished the statutory warnings attendant with the request. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2002). When appellant refused to provide a breath specimen, Officer Cruz asked appellant to sign a form memorializing his refusal. Appellant refused to sign the form and added, "I'm not gonna sign anything until my attorney gets here." The officer responded, "So, you refuse to sign?" And appellant again stated, "I refuse to do everything." A little later in the video, Officer Cruz informed appellant that he would have another opportunity to perform field sobriety tests in the jail. Appellant responded, "No. I don't want to. Let my attorney take care of all this."[1] Following these assertions by appellant, Officer Cruz read a series of questions off of a form to appellant. Appellant refused to

---

[1] We note that police officers are not prohibited from seeking an accused's breath sample or from attempting to obtain a recording of an accused performing field sobriety tests, even after the accused has invoked his right to counsel. *See Miffleton v. State*, 777 S.W.2d 76, 81 (Tex. Crim. App. 1989). It is the admission into evidence of appellant's invocation of his right to counsel following these requests that we review for error.

9

answer any of the questions, stating, "I'm not answering one more word. Nothing." Officer Cruz nevertheless proceeded in asking the questions. Although the series of questions included routine, information gathering questions, they also included questions designed to elicit incriminating information: "Have you been drinking? What? How much? Last drink?" Thus, not only were the jurors allowed to hear appellant assert his right to counsel, but they also heard the continued questioning of appellant following this assertion and observed appellant's refusal to respond to the continued interrogation.[2] We therefore hold that the trial court erred in allowing the jury to consider the portion of the videotape that included appellant's invocation of his right to counsel, the officer's

---

[2] The State contends that only two to four minutes of the video were played after appellant's invocation of his constitutional rights. Because no transcript of the video is included in the record and because appellant does not specify what portions of the video were played for the jury, the State argues that we cannot discern the content of the video viewed by the jury and appellant has therefore failed to preserve error. Our review of the record included viewing the entire videotape along with the transcript of the trial. It is apparent from defense counsel's objections during the trial that the jurors were, at the very least, allowed to hear appellant invoke his right to counsel and his right to remain silent: "Your Honor, at this point we would enter an objection to any further evidence on the videotape. Mr. Reid has indicated he does not wish to answer any questions after being Mirandized and the officer is continuing to ask questions of him. We object to any further video." The trial court's admission of appellant's invocation of his right to counsel, alone, is error. *See Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991) (evidence of accused invoking right to counsel may improperly be considered as inference of guilt). Nevertheless, it is evident that the jurors were allowed to hear more than appellant's request for counsel. After the trial court overruled the objection, it asked how much more of the video would be played. The State answered, "Just a couple of minutes. It's almost over, your Honor."

The State also contends that appellant waived error as to the admission of appellant's invocation of his constitutional rights because defense counsel did not object until after the jury was allowed to hear appellant invoke his rights. As we explained above, because appellant had already asserted his objections in his motion to suppress, he did not need to reassert his objections to the same evidence at trial, and, in the context of this record, defense counsel's statement, "No objection," did not waive this preservation of error.

continued questioning following appellant's invocation of his right, and appellant's exercise of his right to remain silent in response to the questioning.

Because this error is constitutional in nature, we must now conduct a harm analysis under Texas Rule of Appellate Procedure 44.2. *See Mallory v. State*, 752 S.W.2d 566, 570 (Tex. Crim. App. 1988); *Hardie v. State*, 787 S.W.2d 89, 91 (Tex. App.—Dallas 1990), *aff'd*, 807 S.W.2d 319 (Tex. Crim. App. 1991). We will reverse appellant's conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction. Tex. R. App. P. 44.2(a). In conducting this analysis, we must consider (1) the source of the error, (2) the nature of the error, (3) the extent the error was emphasized by the State, (4) its probable collateral implications, (5) the probable weight a juror would place upon the error, and (6) whether declaring the error harmless would encourage the State to repeat it with impunity. *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989). We must isolate the error and its effect and ask whether a rational trier of fact might have reached a different result if the error had not occurred and its effects had not resulted. *Id.* at 588.

In this case, the source of the error was the State's offer of and the trial court's admission of the portion of the videotape depicting appellant invoking his right to counsel, the subsequent questioning of appellant by Officer Cruz, and appellant's exercise of his right to remain silent. The error was constitutional in nature. The State did not refer to appellant's invocation of his rights or his refusal to respond to Officer Cruz's subsequent questioning in any way, except to point out during closing arguments that the videotape revealed appellant's belligerent attitude. Nevertheless, the probable implication of appellant's invocation of his rights and refusal to answer

11

is that the jury may have improperly considered them as evidence of guilt. *Hardie*, 807 S.W.2d at 322.

Although it is difficult to gauge how much weight the jury might have placed on the erroneously admitted evidence, we may consider other evidence of guilt in our analysis. *Harris*, 790 S.W.2d at 588. The State's evidence consisted of Officer Cruz's testimony regarding appellant's conduct and performance of field sobriety tests as well as his observations of slurred speech, the smell of alcohol on appellant's breath, and watery eyes; Officer Hart's testimony regarding the results of the HGN test he administered to appellant; and the videotape depicting appellant's performance of the field sobriety tests and his general conduct during the stop and at the jail. Although appellant was able to stand, his performance on the field sobriety tests was poor. Officer Val Verde and the booking officer at the jail also testified about appellant's conduct and that it indicated intoxication. In addition, the State presented the medical report, in which the treating physician suggested that appellant was intoxicated when he arrived at the hospital. Furthermore, the jury heard the testimony of appellant, who did not dispute that he had imbibed alcohol the evening he was stopped but claimed to have only had two beers. Although the State presented compelling evidence of guilt, we conclude that it is not so overwhelming that the error's effect upon the jury's function in determining the facts dissipated. *Id.* at 587. As the Court of Criminal Appeals has explained:

> T]he reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the juror's decision-making . . . . If the error was of a magnitude that it disrupted the juror's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted. Again, it is the effect of the error and not the other evidence that must dictate the reviewing court's judgment.

*Id.* at 587-88. The jury in this case was asked to consider appellant's conduct throughout the videotape. We cannot say that the jury's consideration of appellant's invocation of his constitutional rights did not taint his conviction. *See Hardie*, 807 S.W.2d at 322 (evidence of accused invoking his right to counsel may improperly be considered as evidence of guilt).

As to the last factor of our harm analysis, case law clearly prohibits the admission of the type of evidence that was admitted here—*i.e.*, appellant's invocation of his constitutional rights. We would be remiss in declaring the error harmless and possibly encouraging the repetition of the error. Accordingly, appellant's fourth point of error is sustained.

## CONCLUSION

We hold that the trial court erred in allowing the jury to consider the portion of the videotape depicting appellant invoking his right to counsel, the continued questioning by the officer following appellant's assertion of his constitutional right, and appellant's exercise of his right to remain silent. We further hold that this error was not harmless beyond a reasonable doubt. Accordingly, we reverse appellant's conviction and remand for a new trial.

Jan P. Patterson, Justice

Before Justices Kidd, Yeakel and Patterson

Reversed and Remanded

Filed: April 18, 2002

Do Not Publish